**Nadine M. ANDERSEN and Tony Andersen, Plaintiffs–Appellants,**

v.

**Stephen D. LINDENBAUM, M.D., Defendant–Appellee.**

**No. 04CA1266.**

Colorado Court of Appeals, Div. A.

Sept. 22, 2005.

Certiorari Granted April 10, 2006.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2005.

Alexander & Ricci, PC, Joseph M. Ricci, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Kennedy, Christopher, Childs & Fogg, PC, Edward D. Bronfin, John R. Mann, Denver, Colorado, for Defendant–Appellee.

WEBB, J.

In this medical negligence case based solely on lack of informed consent, plaintiffs, Nadine M. Andersen and Tony Andersen, her husband, appeal the summary judgment entered in favor of her treating physician, defendant, Stephen D. Lindenbaum, based on the two-year statute of limitations, § 13–80–102.5(1), C.R.S.2005. We affirm.

For purposes of summary judgment, the parties do not dispute that in 1994 Lindenbaum treated Andersen for a left hip fracture. His treatment included surgery shortening her healthy right leg to make it even with her left leg, which had shrunk due to

the fracture. Andersen last saw Lindenbaum in 1997. Thereafter, she began experiencing complications from the surgery on her right leg.

Andersen sued Lindenbaum in December 2002, alleging that he failed to inform her of nonsurgical alternatives to having the healthy leg shortened, which were set forth in an April 17, 1995 letter to Lindenbaum from an out-of-state physician with whom Andersen had consulted. The parties agreed to limit initial discovery to statute of limitation issues.

During Andersen's deposition, defense counsel referred to the statute of limitations in various contexts. Later, he showed her a two-page, single spaced letter that she had written to the consulting physician on November 4, 2002. This letter contested information the physician had given to Andersen's attorney based on her recollection of the 1995 consultation. The letter included the statement, "I have to tell you that I was incredibly shocked to see your letter dated April 17, 1995 in Dr. Lindenbaum's file *in January 2000*" (emphasis supplied). She testified:

> Q. Is the information—all of the information in [the November 4, 2002 letter] accurate to the best of your knowledge?
>
> A. I have reread it, yes, sir.

Andersen was not asked a specific question about the January 2000 date referenced in her letter. Her attorney did not examine her about the date. She did not address this date in any change to her deposition under C.R.C.P. 30(e).

Several months later, Lindenbaum moved for summary judgment on the basis that Andersen admitted having seen the letter from the consulting physician in January 2000, more than two years before she had commenced suit, and therefore her lack of informed consent claim was untimely under § 13–80–102.5(1). In opposition to the motion, Andersen submitted an affidavit stating that the January 2000 date in her letter to the consulting physician "[w]as a typographical error and in fact, I affirmatively state that I did not know of [the consultant's] letter dated April 17, 1995 until January of

2001 when I obtained documents from my Social Security file that was [sic] gathered by the Social Security Administration." Andersen's opposition also included an unauthenticated copy of a letter to her from the Social Security Administration confirming a November 17, 2000 appointment at which she was to provide information "to complete your Social Security claim."

Notwithstanding Andersen's affidavit, the trial court granted the summary judgment motion, explaining:

> The Court finds that Plaintiff has changed her testimony. The Court finds that the Plaintiff was available for cross-examination during the deposition testimony, that the Plaintiff has access to the letter in question, in that Plaintiff authored and sent the letter and that the affidavit was not based on newly discovered evidence, and finally, that there was no confusion about the date on the letter, as was made clear through Plaintiff and Plaintiff's father-in-law's authentication of the letter.

## I.

▮ We review de novo the trial court's summary judgment ruling. *Aspen Wilderness Workshop, Inc. v. Colo. Water Conservation Bd.*, 901 P.2d 1251 (Colo.1995).

Under C.R.C.P. 56(c), summary judgment is proper only in the absence of disputed issues of material fact and where the moving party is entitled to judgment as a matter of law.

▮ We review all evidence properly before the trial court in the light most favorable to the nonmoving party, *Redmond v. Chains, Inc.*, 996 P.2d 759 (Colo.App.2000), giving the nonmoving party the benefit of all reasonable inferences that may reasonably be drawn from the evidence, and we resolve all doubts as to the existence of a material fact against the moving party. *Schold v. Sawyer*, 944 P.2d 683 (Colo.App.1997).

▮ Under the sham affidavit doctrine, a trial court may disregard a disputed issue of material fact in an affidavit opposing a summary judgment motion if the affidavit contradicts the affiant's previous sworn deposition

testimony. *Luttgen v. Fischer,* 107 P.3d 1152 (Colo.App.2005).

■ After examining extensive federal precedent and noting the similarity between C.R.C.P. 56 and Fed.R.Civ.P. 56, another division of this court in *Luttgen, supra,* adopted the three factors used by federal courts in determining whether an affidavit presents only a sham factual issue:

> [W]hether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain.

*Luttgen v. Fischer, supra,* 107 P.3d at 1156 (quoting *Burns v. Bd. of County Comm'rs,* 330 F.3d 1275, 1282 (10th Cir.2003)). Although *Luttgen* was decided during the pendency of this appeal, the trial court used the same factors, citing federal authority.

■ We consider the *Luttgen* division's analysis of the sham affidavit doctrine well reasoned and apply it here. However, the *Luttgen* division did not address the scope of appellate review of a trial court's decision to disregard an affidavit because it presents only a sham factual issue. The parties have cited no Colorado authority on this specific question, and we have found none.

■ We review evidentiary rulings in summary judgment proceedings for abuse of discretion. *See, e.g., K.H.R. v. R.L.S.,* 807 P.2d 1201 (Colo.App.1990); *Armbruster v. Edgar,* 731 P.2d 757 (Colo.App.1986).

The Tenth Circuit reviews sham affidavit rulings for abuse of discretion. *See, e.g., Ralston v. Smith & Nephew Richards, Inc.,* 275 F.3d 965 (10th Cir.2001); *Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc.,* 131 F.3d 874 (10th Cir.1997). These cases note that evidentiary rulings in general, and rulings on affidavits during summary judgment proceedings in particular, are vested in the trial court's discretion.

At least three other federal circuits also apply an abuse of discretion standard to sham affidavit rulings. *See Torres v. E.I.* *Dupont De Nemours & Co.,* 219 F.3d 13 (1st Cir.2000); *Kalis v. Colgate–Palmolive Co.,* 231 F.3d 1049 (7th Cir.2000); *Evans v. Techs. Applications & Serv. Co.,* 80 F.3d 954 (4th Cir.1996). We have found no contrary federal circuit court authority.

Hence, we conclude that a trial court's ruling on a sham affidavit should be reviewed for abuse of discretion, and we do so here.

## II.

■ We reject Andersen's contention that the trial court erred in disregarding the factual issue arising from the difference between her deposition testimony and her affidavit.

The record supports the trial court's application of the three factors adopted in *Luttgen, supra.* First, Andersen was cross-examined on the accuracy of her letter by defense counsel. Second, as its author, she had prior knowledge of and access to the letter. Third, she testified that "all of the information" in the letter was accurate, without expressing confusion or qualification.

Andersen seeks to distinguish federal cases applying the sham affidavit doctrine based on the specificity of questions asked during the affiant's deposition. *See, e.g., Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc., supra* (direct question concerning customers referred by deponent). In contrast, she was not asked a specific question about the January 2000 date in her letter during the deposition. This distinction does not persuade us to depart from the three-factor test here.

■ The sham affidavit doctrine is "based on the premise that, had prior deposition testimony been incorrect, the affiant should have corrected the deposition" under C.R.C.P. 30(e), and having not utilized that opportunity, "should ordinarily not be allowed to later contradict that testimony simply to survive summary judgment." *Luttgen v. Fischer, supra,* 107 P.3d at 1156. Engrafting a specific question limitation onto the sham affidavit doctrine where, as here, the deposition testimony was unambiguous "would greatly diminish the utility of summary judgment as a procedure for screening

out sham issues of fact." *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

Nor are we persuaded by Andersen's argument that her affidavit should have been accepted as resolving either ambiguity or conflict in her deposition testimony. During the deposition, Andersen was presented with her complaint, which alleged that she had seen the consultant's letter in 2001, and she confirmed that she had read the complaint. However, the deposition excerpts in the record do not show that she was asked whether all the allegations in the complaint were accurate, which might have created conflict or ambiguity.

During the deposition, she agreed that her purpose in writing the letter to the consulting physician had been "to reconstruct or put down on paper [her] recall of the visit" in 1995, because she disagreed with a letter that the consulting physician had written to her attorney. Andersen argues that her statement about having first seen the consultant's letter in 2000 was unrelated to this purpose. Nevertheless, the absence of a nexus between the date and the purpose of the letter does not change her unqualified admission that "all" the information in her letter was accurate.

Finally, we reject Andersen's argument that the Social Security Administration documents filed in opposition to the summary judgment motion create a disputed issue of material fact concerning when she first saw the consulting physician's letter. First, these documents do not show when Andersen first had access to her Social Security file or whether that file contained the consulting physician's letter. Hence, apart from Andersen's affidavit, the Social Security documents do not establish a factual issue concerning when she first saw the consulting physician's letter that would preclude summary judgment. Second, the discussion of the Social Security file in the affidavit served only to explain why Andersen was contradicting her unambiguous, sworn testimony. Having already concluded that the sham affi-

davit doctrine precludes her from doing so, we conclude that the references to the Social Security Administration documents were properly disregarded.

Accordingly, we discern no abuse of discretion in the trial court's disregard of the affidavit as raising only a sham factual issue.

### III.

Having so concluded, we decline to address Lindenbaum's statute of repose argument.

The judgment is affirmed.

Chief Judge DAVIDSON and Judge KAPELKE * concur.